Janice M. Bellucci, Esq., SBN 108911
LAW OFFICE OF JANICE M. BELLUCCI
235 E. Clark Avenue, Suite C
Santa Maria, California 93455
Tel: (805) 896-7854
Fax: (805) 928-8736
JMBellucci@aol.com

Attorney for Plaintiffs John Doe #1,
John Doe #2, John Doe #3, John Doe #4,
John Doe #5, John Doe #6, John Doe #7,
John Doe #8, Jane Doe #9, and Jane Doe #10

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE #1, an individual; JOHN DOE #2, an individual; JOHN DOE #3, an individual; JOHN DOE #4, an individual; JOHN DOE #5, an individual; JOHN DOE #6, an individual; JOHN DOE #7, an individual; JOHN DOE #8, an individual; JANE DOE #9, an individual; and, JANE DOE #10, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>BRENT OESTERBLAD, an individual; DAVID OESTERBLAD, an individual; SARAH SHEA, an individual; CHUCK RODRICK II, an individual; TRACI HEISIG, an individual; KEVIN MILLER, an individual; MELBOURNE IT DBS, a corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: EDCV13 – 514 JGB (DTBx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** |

1

# **TABLE OF CONTENTS**

|  |  | Page(s) |
|---|---|---|
| Table of Contents | | i |
| Points and Authorities | | ii |
| MEMORANDUM OF POINTS AND AUTHORITIES | | 2 |
| I. INTRODUCTION | | 2 |
| II. BACKGROUND | | 2 |
| III. STATEMENT OF FACTS | | 3 |
| | A. Plaintiffs. | 3 |
| | B. Defendants. | 9 |
| IV. STANDARD FOR RELIEF | | 9 |
| | A. Temporary Restraining Order and Preliminary Injunction. | 9 |
| | B. Right of Publicity. | 10 |
| V. LEGAL ARGUMENT | | 11 |
| | A. Plaintiff Has Shown a Likelihood of Success on the Merits. | 11 |
| | 1. Defendants Published Plaintiffs' Names and Photographs Without Consent. | 11 |
| | 2. Defendants Used Plaintiffs' Names and Photographs for Purposes of Advertising or Selling, or Soliciting Purchases of, Products, Merchandise, Goods or Services. | 13 |
| | B. Plaintiffs Will Suffer Immediate and Significant Irreparable Injury If Defendants Continue to Publish Their Names and Photographs. | 13 |
| | C. The Public Interest in Immediately Enforcing the Ordinance is Relatively Minor. | 14 |
| VI. CONCLUSION | | 15 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
***EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION**

# TABLE OF AUTHORITIES

| AUTHORITIES | Page(s) |
|---|---|
| *Aroa Marketing, Inc. v. Hartford Insurance Company of the Midwest*, 198 Cal. App. 4th 781, 787 (2011) | 10 |
| *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831 (6th Cir. 1983) | 12 |
| *Comedy III Productions, Inc., v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 391 (California Supreme Court 2001) | 10-12 |
| *Hebrew University v. General Motors LLC*, 2012 U.S. Dist. LEXIS 148150 | 10-12 |
| *KNB Enterprises v. Matthews* (2000) 78 Cal. App. 4th 362, 366 | 10 |
| *McFarland v. Miller*, 14 F.3d 912, 918-919 (3d Cir. 1994) | 11 |
| *Midler v. Ford Motor Co.*, 849 F.2d 460 (9th Cir. 1988) | 12 |
| *Motschenbacher v. R.J. Reynolds Tobacco Company*, 498 F.2d 821 (9th Cir. 1974) | 12 |
| *Playboy Enterprises Inc. v. Calvin Designer Label*, 985 F. Supp. 1218 (N.D.Cal. 1997) | 10 |
| *Republic of Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) | 10 |
| *Southwest Voters Registration Ed. Project v. Shelley*, 344 F.3d 914, 917-18 (9th Cir. 2003) | 10,13-14 |
| *Vanna White v. Samsung Electronics America, Inc.*, 1992 U.S. App. LEXIS 19253 (9th Cir. 1991) | 12 |
| *Walker v. County of Santa Clara,* 2011 WL 4344212 (N.D. Cal. 2011) | 9 |

| STATUTES | |
|---|---|
| Fed. R. Civ. P. 65(b) | 10,13 |
| Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961 | 2 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
***EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The *ex parte* application, which this memorandum of points and authorities supports, seeks a temporary restraining order prohibiting Defendants Brent Oesterblad, Sarah Shea, Chuck Rodrick II, Kevin Miller, and Melbourne IT DBS, Inc. ("Defendants") from violating Plaintiffs' rights of publicity by continued publication of the names, photographs and other personal information of Plaintiffs John Doe #1, John Doe #2, John Doe #3, John Doe #4, John Doe #5, John Doe #6, John Doe #7, John Doe #8, Jane Doe #9, and Jane Doe #10 ("Plaintiffs") on the public websites SORarchives, Online Detective and/or Offendex.

Plaintiffs make this application on the basis, as alleged in the complaint in this action, that publication of their personal information, including but not limited to, name and photograph violates Plaintiffs' right to publicity as recognized by California Civil Code § 3344 as well as intentionally inflicts emotional distress upon them.[1]  Further publication of Plaintiffs' names and photos will result in irreparable harm, including but not limited to, further damage to their physical safety, property, business and reputations.

## II. BACKGROUND

On information and belief, Defendants own, operate, maintain, serve as agents of and/or are employed by one or more of the following privately owned websites: SORarchives, Offendex and Online Detective, which are published throughout the state of California.  The websites contain the names and photographs of many thousands of individuals who the websites identify as registered sex offenders.

---

[1] Although the complaint also alleges Defendants have violated the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961 et seq., equitable relief is limited under that statute to the Attorney General of the United States.

2

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
***EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION**

Defendants have not obtained the consent of Plaintiffs prior to publication of their names and photographs on the privately owned websites. Plaintiffs, upon learning of the publication of their names and photographs, requested removal of that information from those websites.

Defendants did not remove Plaintiffs' names and photos, as requested, but instead demanded payment in amounts up to $500 for removal of Plaintiffs' names and photographs from the privately owned website(s). When some plaintiffs refused to pay for removal of their names and photographs from the website(s), Defendants added information to the website(s) regarding Plaintiffs' family members and businesses. For example, Defendants added the name of the wife of Plaintiff John Doe #4 as well as a link to their entire wedding album, containing photos and videos, his personal phone number and E-mail address to the SORarchives website. Doe #4 Decl. ¶ 11. Defendants further added the name, website and E-mail address of Plaintiff John Doe's business to the SORarchives website. Doe #4 Decl. ¶ 12.

On information and belief, the SORarchives website began its online publications in 2012. The website address of SORarchives is www.sorarchives.com. On information and belief, the contents of the SORarchives website are similar to the contents of the Offendex website which began to publish in 2011. On information and belief, a lawsuit was filed against the Offendex website in 2012 and that website was discontinued shortly thereafter. The website address of the Offendex website was www.offendex.com. A current search of that website address results in an automatic forwarding to the Online Detective website at www.onlinedetective.com. The contents of the Online Detective website are also similar to the contents of the Offendex website.

### III. STATEMENT OF FACTS

#### A. Plaintiffs.

Plaintiff John Doe #1 is a self-employed water specialist who was convicted in 1979, more than 30 years ago, of a single sex-related offense. As a result of his conviction, Plaintiff John Doe #1 is required to register as a sex offender. *See* Declaration of John Doe #1 ("Doe #1 Decl.¶ 3).

3

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
***EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION**

Information regarding Plaintiff John Doe #1, including his name and photograph, has been publicly posted on privately owned websites, including but not limited to, SORarchives. (Doe #1 Decl. ¶ 4.) Plaintiff John Doe #1 did not provide SORarchives with prior consent for the posting of any information regarding him, including, but not limited to, his name and photograph. (Doe #1 Decl. ¶ 5.)

SORarchives demanded payment from Plaintiff John Doe #1 for removal of his name and photo from SORarchives on or about March 18, 2013. (Doe #1 Decl. ¶ 7.) Plaintiff John Doe #1 paid SORarchives the sum of $79 for removal of that information from the SORarchives website. (Doe #1 Decl. ¶ 8.) SORarchives did not remove any information regarding Plaintiff John Doe #1 from the website and instead demanded an additional sum of $420 for removal of that information. (Doe #1 Decl. ¶ 10.) Plaintiff John Doe #1 did not pay the addition sum of $420. SORarchives continues to publish personal information regarding John Doe #1, including but not limited to, his name and photograph on that website. (Doe #1 Decl. ¶ 11.)

As a direct result of the unauthorized use of his personal information, including but not limited to, name and photograph, on the SORarchives website, the person, property and business of John Doe #1 have been damaged. (Doe #1 Decl. ¶ 12.) In addition, John Doe #1 has suffered severe emotional distress, including public humiliation and depression. ((Doe #1 Decl. ¶ 14.)

Plaintiff John Doe #2 is a journeyman painter who was convicted in 1999, more than 10 years ago, of a single sex-related offense. As a result of his conviction, Plaintiff John Doe #2 is required to register as a sex offender; however, his name and photograph are not listed on a state government list of registered sex offenders. *See* (Doe #2 Decl. ¶ 4.)

On February 26, 2013, Plaintiff John Doe #2 learned that his personal information, including his name and photograph, was publicly posted on SORarchives, a privately owned website. (Doe #2 Decl. ¶ 5.) Plaintiff John Doe #2 did not provide SORarchives with prior consent for the posting of any information regarding him, including, but not limited to, his name and photograph. (Doe #2 Decl. ¶ 6.)

4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
***EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION**


1    On March 27, 2013, Plaintiff John Doe #2 requested that SORarchives remove all personal information regarding him from that website. (Doe #2 Decl. ¶ 7.) In response to his request, SORarchives demanded payment from Plaintiff John Doe #1 for removal of his personal information from that website. (Doe #2 Decl. ¶ 8.)

Plaintiff John Doe #2 paid SORarchives the sum of $79 for removal of that information from the SORarchives website. (Doe #2 Decl. ¶ 9.) Despite payment of $79, SORarchives did not remove any information regarding Plaintiff John Doe #2 from the website. (Doe #2 Decl. ¶ 10.)

SORarchives continues to publish personal information regarding John Doe #2, including but not limited to, his name and photograph on that website. (Doe #2 Decl. ¶ 13.) As a direct result of the unauthorized use of his personal information, including but not limited to, name and photograph, on the SORarchives website, the person, property and business of John Doe #2 have been damaged. The estimated damage to John Doe's business is in the range of $50,000 to $80,000. (Doe #2 Decl. ¶ 12.) In addition to this damage, John Doe #2 has suffered severe emotional distress, including public humiliation and depression. ((Doe #2 Decl. ¶ 15.)

Plaintiff John Doe #3 is a paralegal who was convicted in 1999, more than 10 years ago, of a single sex-related offense. (Doe #3 Decl. ¶ 4.) Plaintiff John Doe #3 is not required to register as a sex offender and his name and photograph have never been included on the state government's list of registered sex offenders. (Doe #3 Decl. ¶¶ 5 and 6.)

On or about March 16, Plaintiff John Doe #3, learned that his personal information, including his name and photograph, were publicly posted on SORarchives, a privately owned website. (Doe #3 Decl. ¶ 7.) Plaintiff John Doe #3 did not provide SORarchives with prior consent for the posting of any information regarding him, including, but not limited to, his name and photograph. (Doe #3 Decl. ¶ 8.)

On or about March 16, 2013, John Doe #3 requested that SORarchives remove all information regarding him from that website. (Doe #3 Decl. ¶ 11.) After his request, SORarchives

5

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
*EX PARTE* **APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION**

demanded payment from Plaintiff John Doe #3 for removal of that information from the website. (Doe #3 Decl. ¶ 10.)

Plaintiff John Doe #3 paid SORarchives the sum of $79 for removal of his personal information from that website. (Doe #3 Decl. ¶ 11.) SORarchives did not remove any information regarding Plaintiff John Doe #3 from the website and instead demanded an additional sum of $421 for removal of that information. (Doe #3 Decl. ¶ 12.) Plaintiff John Doe #3 did not pay the additional sum of $420. (Doe #3 Decl. ¶ 13.) SORarchives continues to publish personal information regarding John Doe #3, including but not limited to, his name and photograph on that website. (Doe #3 Decl. ¶ 14.)

As a direct result of the unauthorized use of his personal information, including but not limited to, name and photograph, on the SORarchives website, the person, property and business of John Doe #3 have been damaged. (Doe #3 Decl. ¶ 15.) In addition, John Doe #3 has suffered severe emotional distress, including public humiliation and depression. (Doe #3 Decl. ¶ 17.)

Plaintiff John Doe #4 is a wedding videographer who was convicted in 2002, more than 10 years ago, of a single sex-related offense. As a result of his conviction, Plaintiff John Doe #4 was required to register for 10 years as a sex offender. His requirement to register terminated in January 2013. (Doe #4 Decl. ¶¶ 3 and 4.)

After termination of his duty to register, Plaintiff John Doe #4 learned that his personal information, including his name and photograph, were publicly posted on SORarchives, a privately owned website. (Doe #4 Decl. ¶ 5.) Plaintiff John Doe #4 did not provide SORarchives with consent for the posting of any information regarding him, including, but not limited to, his name and photograph. (Doe #4 Decl. ¶ 6.)

On or about January 28, 2013, John Doe #4 notified SORarchives that his duty to register was terminated and requested that his personal information be removed from that website. (Doe #4 Decl. ¶ 6.) In response to that request, SORarchives demanded payment from Plaintiff John Doe #4 for removal of his name and photo from that website. (Doe #4 Decl. ¶ 8.)

1  On or about January 28, 2013, John Doe #4 paid SORarchives the sum of $79 for removal of his personal information from the SORarchives website. (Doe #4 Decl. ¶ 9.) SORarchives did not remove any information regarding Plaintiff John Doe #4 from the website and instead demanded an additional sum of $421 for removal of that information. (Doe #4 Decl. ¶ 10.) Plaintiff John Doe #4 did not pay the additional sum of $421.

Instead of removing personal information regarding John Doe #4 from the website, SORarchives added more personal and private information regarding John Doe #4, including his personal cell phone number, personal E-mail address, wife's name, and link to his entire album of photos and videos taken at his wedding on March 10, 2012. (Doe #4 Decl. ¶ 11.) SORarchives continues to publish personal information regarding John Doe #4, including but not limited to, his name and photograph on that website. (Doe #4 Decl. ¶ 14.)

As a direct result of the unauthorized use of his personal information, including but not limited to, his name and photograph, on the SORarchives website, the person, property and business of John Doe #4 have been damaged. Damage to John Doe #4 includes, but is not limited to, costs in the amount of $3,071.46 required to rebrand his business. (Doe #4 Decl. ¶ 13.) Further, John Doe #4 has suffered severe emotional distress, including public humiliation and depression. ((Doe #4 Decl. ¶ 16.)

Plaintiff John Doe #5 is a self-employed salesman who was convicted in 1996, more than 15 years ago, of a single sex-related offense. Plaintiff John Doe #5 has never been required to register as a sex offender. (Doe #5 Decl. ¶ ¶ 3 and 4.)

Information regarding Plaintiff John Doe #5, including his name and photograph, has been publicly posted on privately owned websites, including but not limited to, SORarchives. (Doe #5 Decl. ¶ 5.) Plaintiff John Doe #5 did not provide those websites with prior consent for the posting of any information regarding him, including, but not limited to, his name and photograph. (Doe #5 Decl. ¶ 6.)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
***EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION**

John Doe #5 requested removal of his personal information from the SORarchives website in August 2012. SORarchives demanded payment from Plaintiff John Doe #1 in the amount of $500 for removal of his name and photo from that website. (Doe #5 Decl. ¶ 7.) Plaintiff John Doe #5 did not pay SORarchives for removal of that information from the SORarchives website. (Doe #5 Decl. ¶ 8.)

Subsequent to Plaintiff John Doe #5's refusal to pay SORarchives, the website added information to the website regarding John Doe #5 as well as his mother, Plaintiff Jane Doe #10 and his brother. (Doe #5 Decl. ¶ 9.) The additional information included, but was not limited to, information about his EBay accounts and customers. The estimated damage to John Doe's business is $2,000. (Doe #5 Decl. ¶ 12.)

As a direct result of the unauthorized use of his personal information, including but not limited to, name and photograph, on the SORarchives website, the person, property and business of John Doe #5 have been damaged. (Doe #5 Decl. ¶ 14.) In addition, John Doe #5 has suffered severe emotional distress, including public humiliation and depression. ((Doe #5 Decl. ¶ 15.)

Jane Doe #9 is the wife of John Doe #4. (Doe #9 Decl. ¶ 1.) She is not a registered sex offender nor has she been convicted of an offense of any kind, felony or misdemeanor. (Doe #9 Decl. ¶ 3.) SORarchives published information about Jane Doe #9 on that website which was linked to information regarding her husband, John Doe #4. That information included, but was not limited to, her name and photographs and videos taken at their wedding. (Doe #9 Decl. ¶ 10.) Jane Doe #9 did not provide consent to SORarchives to post information about herself, including but not limited to, her name and photograph. (Doe #9 Decl. ¶ 3.)

As a direct result of the unauthorized use of her personal information, including but not limited to, name and photographs, on the SORarchives website, the person, property and business of Jane Doe #9 have been damaged. (Doe #9 Decl. ¶ 12.) In addition, Jane Doe #9 has suffered severe emotional distress, including public humiliation and depression. ((Doe #9 Decl. ¶ 14.)

8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
*EX PARTE* **APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION**

**B.     Defendants.**

Defendant Melbourne IT DBS, Inc. is incorporated in the State of California and is conducting business in that state. On information and belief, the corporation is the registrar of the domain names and in that capacity served as an agent for SORarchives, Offendex and/or Online Detective, published in California.

On information and belief, Defendant Brent Oesterblad is an owner, operator, maintainer, agent and/or employee of privately owned websites including SORarchives, Offendex and Online Detective which are published throughout California. On information and belief, Defendant Oesterblad is married to Defendant Sarah Shea and is a resident of Paradise Valley, Arizona.

On information and belief, Defendant Sarah Shea is an owner, operator, maintainer, agent and/or employee of privately owned websites including SORarchives, Offendex and Online Detective which are published throughout California. On information and belief, Defendant Shea is married to Defendant Brent Oesterblad and is a resident of Paradise Valley, Arizona.

On information and belief, Chuck Rodrick II is an owner, operator, maintainer, agent and/or employee of privately owned websites including SORarchives, Offendex and Online Detective which are published throughout California. On information and belief, Defendant Rodrick is a resident of Desert Hills, Arizona.

On information and belief, Kevin Miller is an owner, operator, maintainer, agent and/or employee of privately owned websites including SORarchives, Offendex and Online Detective which are published throughout California. On information and belief, Defendant Miller is a resident of Scottsdale, Arizona.

## IV.  STANDARD FOR RELIEF

**A.     Temporary Restraining Order and Preliminary Injunction.**

"The standard for issuing a TRO is the same as that for issuing a preliminary injunction." *Walker v. County of Santa Clara,* 2011 WL 4344212 (N.D. Cal. 2011) (citations omitted). Plaintiffs

are entitled to a temporary restraining order and preliminary injunction if *either* (1) they establish a "probability" of success on the merits and a "possibility" of irreparable injury unless relief is granted; *or* (2) they establish a "fair chance" of success on the merits and the balance of interests "tip strongly" in his favor. *Southwest Voters Registration Ed. Project v. Shelley*, 344 F.3d 914, 917-18 (9th Cir. 2003); *Republic of Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988); *Playboy Enterprises Inc. v. Calvin Designer Label*, 985 F. Supp. 1218 (N.D.Cal. 1997); *see also* Fed. R. Civ. P. 65(b). "[This] analysis creates a continuum: the less certain the district court is of the likelihood of success on the merits, the more [a plaintiff] must convince the district court that the public interest and balance of hardships tip in [his] favor." *Southwest Voters*, 344 F.3d at 918.

### B. Right of Publicity.

The right of publicity is a property right. *Hebrew University v. General Motors LLC*, 2012 U.S. Dist. LEXIS 148150. It is both a statutory and a common law right. *Comedy III Productions, Inc., v. Gary Saderup, Inc.,* 25 Cal. 4th 387, 391 (California Supreme Court 2001).

The common law right of publicity is derived from the law of privacy. *Aroa Marketing, Inc. v. Hartford Insurance Company of the Midwest*, 198 Cal. App. 4th 781, 787 (2011). Specifically, that right is derived from the fourth type of privacy invasion identified by Dean William L. Prosser. *See* Prosser, *Privacy* (1960) 48 Cal. L.Rev. 383, 389.

> "The 'four distinct torts identified by Dean Prosser and grouped under the privacy rubric are: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness.'"
> *KNB Enterprises v. Matthews* (2000) 78 Cal. App. 4th 362, 366.

The right of publicity addresses the "appropriation, for the defendant's advantage, of the plaintiff's name or likeness". California courts continue to treat right of publicity claims as a subset of privacy claims. *Aroa Marketing* at 788. The right of publicity "signifies the right of an

10

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
*EX PARTE* **APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION**

individual,…., to control the commercial value and exploitation of his name and picture or likeness and prevent others from unfairly appropriating this value for commercial benefit". *McFarland v. Miller*, 14 F.3d 912, 918-919 (3d Cir. 1994). *See also McCarthy* § 1:3 (defining the right of publicity as "the inherent right of every human being to control the commercial use of his or her identity).

Like the right of privacy, a rationale for recognizing a right of publicity protects "an individual's interest in <u>personal dignity</u> and autonomy. *Hebrew University* at 12 (emphasis added). The statutory right of publicity[2], which originated in California in 1971, authorizes the recovery of damages by <u>any living person</u> whose name, photograph, or likeness has been used for commercial purposes without his or her consent. *Comedy III Productions* at 391 (emphasis added). The identity of even an unknown person may possess commercial value. Restatement Third of Unfair Competition § 46(d).

## V. LEGAL ARGUMENT

### A. Plaintiff Has Shown a Likelihood of Success on the Merits.

#### 1. Defendants Published Plaintiffs' Names and Photographs Without Consent.

It cannot be disputed that Defendants have published and continue to publish the names and photographs of all Plaintiffs on the websites under their control, including but not limited to, SORarchives. It also cannot be disputed that Defendants have failed to obtain the consent of any of the 10 plaintiffs named in this matter.[3] Publication of an individual's name and/or photograph in the absence of that individual's consent may be sufficient to constitute a violation of the individual's right of publicity.

---

[2] See California Code § 3344.

[3] In addition, plaintiffs have, upon learning that their names and photos were being published, requested removal of their names and photographs from Defendants' websites.

11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
***EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION**

The California Supreme Court has found that lithographic prints and printed T-shirts containing the likeness of an individual, in the absence of the individual's consent, is a violation of the right of publicity. *Comedy III Productions* at 410. The likeness was not a photograph, but was instead a sketch of an individual. In the instant case, Defendants did not publish sketches, but instead published actual photographs of Plaintiffs'. As such, Defendants' violations of Plaintiffs' rights of publicity are more blatant and egregious.

Federal courts have determined that the use of some likenesses of an individual does not constitute a violation of the right of publicity. For example, the 9th Circuit Court of Appeals has determined that a company's use of a Bette Midler "sound-alike" who sang a song that made Bette Midler famous was not a violation of that right. *Midler v. Ford Motor Co.*, 849 F.2d 460 (9th Cir. 1988). The same court determined that a company that used a robot with mechanical features did not violate the right of publicity of Vanna White, a well-known television actress. *Vanna White v. Samsung Electronics America, Inc.*, 1992 U.S. App. LEXIS 19253 (9th Cir. 1991).

The same federal courts have determined that a violation of the right of publicity existed when a photograph of a well-known race driver's car constituted a violation of a right of publicity of the car's driver even though the driver was not used in the advertisement. *Motschenbacher v. R.J. Reynolds Tobacco Company*, 498 F.2d 821 (9th Cir. 1974). And the 6th Circuit Court of Appeals has determined that the mere use of an individual's name, without a photograph or any other likeness, on a company's product constituted a violation of that individual's right of publicity. *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831 (6th Cir. 1983).

The publication of Plaintiffs' names and photos on Defendants' websites harm both the personal dignity and autonomy of those individuals especially in light of the fact that Defendants have identified all plaintiffs as registered sex offenders. Protection from such harm is a basic rationale for an individual's right of publicity. *Hebrew University* at 15. That right is available even when, such as in the instant case, the individuals are unknown persons. Restatement Third of Unfair Competition § 46(d).

It also cannot be disputed that Defendants acted intentionally and with reckless regard in their identification of all plaintiffs as registered sex offenders, regardless of whether a plaintiff has been convicted of a sex-related offense or whether they are currently or ever required to register as a sex offender. For example, Plaintiff Jane Doe #9 has never been convicted of a criminal offense and Plaintiff John Doe #3 has never been required to register as a sex offender. (Doe #9 Decl. ¶ 3) and (Doe #3 Decl. ¶5). Defendants must be held responsible for their intentional and reckless acts which have caused and continue to cause harm to Plaintiffs.

### 2. Defendants Used Plaintiffs' Names and Photographs for Purposes of Advertising or Selling, or Soliciting Purchases of, Products, Merchandise, Goods or Services.

The privately owned websites at issue, SORarchives, Online Detective and Offendex advertise, sell or solicit the purchase of products, merchandise, goods or services. The crux of the matter is that these websites sell that which they unlawfully publish – Plaintiffs' names and photographs. Through each and every website, Defendants sell a service, that is, the service of removing personal information that they unlawfully publish on the very same websites. The Defendants charge about $500 per individual for that service.

Courts that find violations of the right of publicity for the printing of a sketch of an individual on a T-shirt that will be seen by few will likely find violations of the right of publicity for the printing of both names and photographs of individuals on a public website that can be viewed by anyone who utilizes a computer and conducts an online search.

### B. Plaintiffs Will Suffer Immediate and Significant Irreparable Injury If Defendants Continue to Publish Their Names and Photographs.

Because Plaintiffs have established a "probability" of success on the merits of their Right of Publicity claim, they are entitled to a temporary restraining order and preliminary injunction if they can establish the "possibility" of irreparable injury, loss, or damage. *Southwest Voters*, 344 F.3d at 917; see also Fed. R. Civ. P. 65(b). If, on the other hand, this Court finds that Plaintiffs have merely

13

established a "fair chance" of success on the merits, they are still entitled to a temporary restraining order and an order to show cause re preliminary injunction because the balance of interests "tip strongly in [their] favor." *Southwest Voters*, 344 F.3d at 917.

If Defendants are allowed to continue publication of Plaintiffs' names and photos, Plaintiffs will suffer immediate and irreparable harm. Plaintiffs have already suffered and will continue to suffer damage to their persons, property, businesses and reputations. In addition, Plaintiffs will be in danger of public reprisals. *See* Doe #1 Decl. ¶ 13, Doe #2 Decl. ¶ 13, Doe #3 Decl. ¶ 16, Doe #4 Decl. ¶ 15, Doe #5 Decl. ¶ 13, and Doe #9 Decl. ¶ 13. As discussed in the declarations filed in support of this motion, the burdens imposed upon Plaintiffs are significant and far-reaching.

**C.  The Public Interest in Immediately Enforcing the Ordinance is Relatively Minor.**

Here, the public interest in continuing publication of Plaintiffs' names and photographs is relatively minor. This is due, in part, because information published on the privately owned websites is incorrect and/or outdated. Further, information provided on the websites which is both correct and current can be found elsewhere such as state and federal government websites.[4]

Thus, the balance of interests in temporarily restraining Defendants from publication of Plaintiffs' names and photographs clearly tips in favor of granting the instant motion.

---

[4] Every state in the nation is required by law to publish on a public website the names and photographs of registered sex offenders in that state. The California website can be found online at www.meganslaw.ca.gov.

14

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant the instant *ex parte* application for temporary restraining order and issue an order to show cause as to why a preliminary injunction should not issue.

Dated:  April 26, 2013                    LAW OFFICE OF JANICE M. BELLUCCI

By: _____/S/_____
Janice M. Bellucci
Attorneys for Plaintiffs John Doe #1, John Doe #2, John Doe #3, John Doe #4, John Doe #5, John Doe #6, John Doe #7, John Doe #8, Jane Doe #9 and Jane Doe #10