VAN ETTEN SUZUMOTO & SIPPRELLE LLP
DAVID B. VAN ETTEN #119049
dvanetten@vsslawyers.com
JOSHUA D. MENDELSOHN #228888
jmendelsohn@vsslawyers.com
2801 Townsgate Road, Suite 210
Westlake Village, California 91361
Telephone: (805) 719-4900
Facsimile: (805) 719-4950

Attorneys for Defendant
MELBOURNE IT DBS, INC.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

JOHN DOE #1, an individual; JOHN DOE #2, an individual; JOHN DOE #3, an individual; JOHN DOE #4, an individual; JOHN DOE #5, an individual; JOHN DOE #6, an individual; JOHN DOE #7, an individual; JOHN DOE #8, an individual; JANE DOE #9, an individual; and JANE DOE #10, an individual,

Plaintiffs,

vs.

BRENT OSTERBLAD, an individual; DAVID OSTERBLAD, an individual; SARAH SHEA, an individual; CHUCK RODRICK II, an individual; TRACI HEISIG, an individual; KEVIN MILLER, an individual; MELBOURNE IT DBS, INC. and DOES 1-10, inclusive,

Defendants.

CASE NO.: EDCV13-00514 JGB (DTBx)

Judge: Hon. Jesus G. Bernal

**DEFENDANT MELBOURNE IT DBS, INC.'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION; DECLARATIONS OF GINA A. HAYES AND JOSHUA D. MENDELSOHN**

1

DEFENDANT MELBOURNE IT DBS, INC.'s OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

## I. INTRODUCTION

Plaintiffs' Application for a Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction ("Application") should be denied as to Defendant Melbourne IT DBS, Inc. ("Melbourne") for myriad reasons.

*First*, there is no emergency to support the *ex parte* relief sought by the Application. Plaintiffs filed their original Complaint in this action on March 20, 2013. They then waited over a month to bring the Application on an *ex parte* basis. There is no indication in the Application that any new or additional facts of an urgent nature arose during that month delay. Presumably, if the situation were truly an emergency, Plaintiffs would not have delayed for over a month in bringing the Application.

*Second*, Plaintiffs are not likely to prevail against Melbourne on the merits of their *Civil Code* § 3344 Right of Publicity claim on which the Application is premised. Melbourne is not the registrar for the subject websites as alleged by Plaintiffs in their Amended Complaint and Application. In fact, Melbourne has no relationship or involvement whatsoever in the subject websites. This is evidenced by the concurrently filed Declaration of Gina A. Hayes, as well as by the fact that the Application includes absolutely no evidence that even purports to support Plaintiffs' position that Melbourne is the registrar for the subject websites. For this reason alone, the Application should be denied. Moreover, even if Melbourne were the registrar for the subject websites, the Communications Decency Act grants Melbourne immunity for claims arising out of the content posted on the subject websites by third parties, such as that complained of here by Plaintiffs.

*Third*, if the Application is denied, Plaintiffs will not suffer "irreparable injury" while their case is being adjudicated by this Court. Plaintiffs admit that all but two of the Plaintiffs are convicted sex offenders (the other two Plaintiffs are the spouses of two of the convicted sex offender Plaintiffs). Such information is already available in the public court records for those who have any interest. Thus, the

alleged reposting of such facts by Defendants is unlikely to have a significant impact on Plaintiffs. Further, Plaintiffs also complain that Defendants have posted links on the subject websites to Plaintiffs' own web content. Such conduct clearly cannot be anticipated to cause harm, or Plaintiffs would not have chosen to make that content publicly available in the first instance.

*Finally*, Plaintiffs' Application fails because the balance of equities tips in favor of Melbourne. By the Communications Decency Act, Congress made a determination that the public good is served by the free flow of information and efficient operation of the Internet. In order to promote that public policy goal, by the CDA, Congress granted companies such as Melbourne immunity for, and relieved them of, the obligation of, policing content posted by third parties, such as that complained of here. This policy prevails here.

## II. FACTUAL BACKGROUND

Melbourne IT DBS, Inc. ("Melbourne") provides domain registration and management services along with other Internet related services to institutional clients. (Declaration of Gina A. Hayes ("Hayes Decl.") ¶ 2.)

Plaintiffs are convicted sex offenders and certain of their spouses. Plaintiffs filed their initial Complaint on March 20, 2013. (Docket Entry ("D.E.") Thereafter on April 10, 2013, Plaintiffs filed an Amended Complaint which for the first time named Melbourne as a defendant. (D.E. 15.) The Amended Complaint alleges, *inter alia*, that the Defendants have violated California *Civil Code* § 3344 by virtue of their operation of three websites that allegedly post Plaintiffs' photographs and names, in addition to identifying the convicted sex offender Plaintiffs as convicted sex offenders.[1] (Amended Complaint ¶ 53.) The Plaintiffs further allege that when

[1] The websites identified in the Complaint and Amended Complaint include www.offendex.com, www.SORarchives.com and www.onlinedetective.com (collectively, the "Websites".).

3

DEFENDANT MELBOURNE IT DBS, INC.'s OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

they contacted the website to remove such content from their websites, the website owners demanded that Plaintiffs pay them for such removal. (Amended Complaint ¶ 27.) The Amended Complaint also alleges, on information and belief, that Melbourne is the domain name registrar for the subject websites and in that capacity is purportedly the agent of the remaining Defendants. (Amended Complaint ¶ 23.) In fact, however, this is not the case.

Melbourne is not the registrar for any of the subject domains.[2] (Hayes Decl. ¶¶ 4-5.) Moreover, Plaintiffs have provided no evidence, or even alleged, that Melbourne was involved in preparing or posting the complained of content or otherwise involved in demanding that Plaintiffs pay for removal of such content from the subject websites.

On Friday April 26, 2013, Plaintiffs filed an *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should not Issue which sought an order requiring Defendants to remove Plaintiffs' names and photos from the subject websites. (D.E. 19.) Plaintiffs' counsel only provided copies of that Application to Melbourne's counsel when it was expressly requested. (Declaration of Joshua D. Mendelsohn ("Mendelsohn Decl.") ¶¶ 3-4.) Moreover, to date, Plaintiffs' counsel has not provided Melbourne

---

[2] The domain www.sorarchives.com is managed by a company named Network Solutions, LLC and the domains www.offendex.com and www.onlinedetective.com are managed by a company named Melbourne IT Ltd. Melbourne IT Ltd. is an Australian company which was under common ownership with defendant Melbourne IT DBS, Inc. through March 12, 2013, at which point defendant Melbourne IT DBS, Inc. was sold. The two companies do not currently share any ownership or management. During the time Melbourne IT Ltd. and defendant Melbourne IT DBS, Inc. were under common ownership, their operations were separate and distinct, with Melbourne IT Ltd. exclusively servicing retail customers and defendant Melbourne IT DBS, Inc. exclusively servicing institutional customers. (Hayes Decl. ¶¶ 6-8.)

with copies of the evidentiary declarations purportedly filed in support of the Application, asserting that it will take "days" to redact the declarations and that they will not be provided until that process is completed. (Mendelsohn Decl. ¶ 5.) Notably, Plaintiffs' counsel has engaged in similar gamesmanship in a number of recent cases.[3]

## III. ARGUMENT

### a. There Is No Urgency to Support Ex Parte Relief.

Plaintiffs filed their original Complaint on March 20, 2013. They then waited over a month to bring the Application on an *ex parte* basis. There is no indication in the Application that any new or additional acts took place during that month delay to create an emergency that was not present at the time the original Complaint was filed. Presumably, if the situation was urgent, Plaintiffs would not have delayed more than a month in bringing the Application.

In addition, the information which Plaintiffs seek to have removed from the Internet is already publicly available and/or has been posted by Plaintiffs on the web. Specifically, the fact that a number of the Plaintiffs are convicted sex offenders is a matter of public record as with nearly any other conviction. Therefore, for this information to remain on the subject websites during the pendency of this action creates no additional risk of harm to Plaintiffs. Moreover, it appears that Plaintiffs complain about Defendants posting links to content that was

---

[3] The Court is referred to the following lawsuits filed by Plaintiffs' counsel in which she failed to provide the opposing party with the Plaintiffs' evidence in support of *ex parte* applications and in which she filed Plaintiffs' *ex parte* applications on Friday afternoon in a transparent attempt at obtaining a tactical advantage: (1) *Jane Doe 1 et al v. City of Simi Valley et al*, CACD Case No. 2:12-cv-08377-PA-VBK; (2) *John Doe, et al v. City of Lancaster et al*., CACD Case No 2:12-cv-10808-SJO-RZ; (3) *Richard Linnington, et al. v. City of Cypress, et al,* CACD Case No. 8:13-cv-00065-CJC-MLG.

originally posted on the Internet *by Plaintiffs themselves*. (Application p.3:8-12.) If the availability of such information on the Internet created a risk of serious harm to Plaintiffs, they presumably would not themselves have posted it on the web in the first instance.

For this reason alone, the Application should be denied.

**b. <u>Plaintiffs' Application Does Not Satisfy the Heavy Burden of Persuasion for Issuance of a Preliminary Injunction</u>.**

A temporary restraining order is an extraordinary remedy granted only when the need for immediate relief is clear. Plaintiffs must establish each of the following to establish the right to such relief:

- That they are likely to succeed on the merits;
- That they are likely to suffer irreparable harm in the absence of preliminary injunctive relief;
- That the balance of equities tips in their favor; and
- That an injunction is in the public interest.

*Winter v. Natural Resources Defense Council* (2008) 555 U.S. 7, 20. As discussed below, these requirements are not met by Plaintiffs in this instance.

**1. Plaintiffs Cannot Demonstrate a "Substantial Likelihood of Prevailing on the Merits".**

In order to obtain a temporary restraining order in this matter, Plaintiffs must demonstrate that they are "likely to prevail on the merits of their case." *Winter*, *supra*, 555 U.S. at 20. Here, Plaintiffs' request for a preliminary injunction is based solely on their California *Civil Code* § 3344 Right of Publicity claim and not their RICO or Intentional Infliction of Emotional Distress claims. (Application p.2:11-14.) Plaintiffs cannot demonstrate a likelihood of success on the merits of their Right of Publicity claim as to Melbourne.

First, Plaintiffs allege, without providing a scintilla of evidence, that Melbourne is the registrar for the domains associated with the subject websites.

This simply is not true. In fact, Melbourne has absolutely no relationship with the subject domains. (Hayes Decl. ¶¶ 4-5.) For this reason, Plaintiffs cannot prevail on any of their claims against Melbourne and there is absolutely no basis for the issuance of a preliminary injunction against Melbourne.

Further, even if Melbourne were the registrar for the domains associated with the subject websites (which it is not), Melbourne is immune from liability for Plaintiffs' *Civil Code* § 3344 claim pursuant to the Communications Decency Act of 1996, 47 U.S.C § 230 ("CDA"). Specifically, Section 230(c)(1) provides immunity from liability for providers and users of an interactive computer service[4] who publish information provided by others. That section provides:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

Under the CDA an interactive computer service, such as Melbourne, qualifies for immunity so long as it does not also function as an "information content provider" for the portion of the statement or publication at issue. 47 U.S.C. §§ 230(f)(3); *Carafano v. Metrosplash.com, Inc.* (9th Cir.2003) 339 F.3d 1119, 1123.

Significantly, the CDA has been held by the Ninth Circuit to bar Right of Publicity claims, such as that brought by the Plaintiffs here. *Carafano v. Metrosplash.com, Inc.* (9th Cir. 2003) 339 F.3d 1119, 1122.

Accordingly, Melbourne, as a domain name registrar, is immune under the CDA from claims arising out of the posting of content on those domains by third

---

[4] The phrase interactive computer service is defined as "any information service, system, or access software provider that provides or enables computer access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2).

parties. This includes Plaintiffs' Right of Publicity claim on which the Application is predicated.

Because Melbourne is not the registrar for the domains associated with the subject websites, and because it is immune from liability for content on domains for which it is the registrar, the Application should be denied as to Melbourne.

**2. <u>Plaintiffs' Request for Injunctive Relief Should Be Denied Because Plaintiffs Will Not Suffer "Irreparable Injury"</u>.**

In order to obtain the relief sought, Plaintiffs must demonstrate that they are likely to suffer "irreparable injury" if injunctive relief is denied. *Winter, supra*, 555 U.S. at 20. Irreparable injury "is the single most important prerequisite for the issuance" of injunctive relief. *Freedom Holdings, Inc. v. Spitzer* (2nd Cir. 2005) 408 F.3d 112, 114.

Here, Plaintiffs can make no showing that they will suffer irreparable harm should the Application be denied. As noted above, like nearly any other criminal conviction, the fact that a number of the Plaintiffs are convicted sex offenders is of public record. Moreover, Plaintiffs cannot be heard to complain of Defendants posting links to web content which has been made public by Plaintiffs themselves. (Application p.3:8-12.) If the posting of such information on the Internet were likely to cause harm, it would be safe to assume that Plaintiffs would not themselves post that very content to the Internet.

Finally, because Melbourne is not the registrar for the domains associated with the Websites, the granting of injunctive relief as to Melbourne will have no impact on the likelihood that Plaintiffs will or will not suffer irreparable harm. Thus, Plaintiffs cannot show that an injunction is an appropriate mechanism to prevent such harm. For these reasons, the Application should be denied.[5]

---

[5] By failing to provide Melbourne with copies of the declarations supporting the Application, Plaintiffs have improperly denied Melbourne the opportunity to fully address and

**3. Plaintiffs' Request for Injunctive Relief Must Fail Because Plaintiffs Cannot Show a Balance of Equities or that the Public Interest Tips in Favor of Plaintiffs.**

The last two prongs of the preliminary injunction test – balance of equities and public interest – are largely the same and can be considered together. *Farris v. Seabrook* (9th Cir. 2012) 677 F.3d 858, 864.

Here, the public policy underpinning the CDA is paramount. The goal of the CDA is to promote the continued development of the Internet and other interactive computer services. 47 U.S.C. § 230(b)(1); *Perfect 10 Inc. v. CCBill LLC* (9th Cir.2007) 488 F.3d 1102, 1118. "The majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of a service.'" *Almeida v. Amazon.com, Inc*. (11th Cir.2006) 456 F.3d 1316, 1321 *quoting Zeran v. American Online, Inc*. (4th Cir.1997) 129 F.3d 327, 330. The Ninth Circuit has followed this approach.

In discussing the CDA, the Ninth Circuit sitting *en banc* in the case of *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC* (9th Cir.2008) 521 F.3d 1157, 1174–75 noted:

> We must keep firmly in mind that this is an immunity statute we are expounding, a provision enacted to protect websites against the evil of liability for failure to remove offensive content. Websites are complicated enterprises, and there will always be close cases where a clever lawyer could argue that

---

respond to their claim that Plaintiffs are likely to suffer irreparable harm. Thus, to the extent the Court is inclined to grant the Application, Melbourne respectfully requests that Plaintiffs first be ordered to provide Melbourne with copies of the declarations supporting the Application and that Melbourne be permitted to brief any issues raised therein prior to entry of an order on the Application.

> something the website operator did encouraged the illegality. Such close cases, we believe, must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged-or at least tacitly assented to-the illegality of third parties. Where it is very clear that the website directly participates in developing the alleged illegality ... immunity will be lost. But in cases of enhancement by implication or development by inference ... section 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles.

The interests raised in this case relating to Melbourne's responsibilities for the Internet content of third parties are the very type of public interests that the CDA was enacted to protect. That is, the public interest, as expressed by the CDA, in allowing for Internet service providers to operate efficiently without the crippling effects of having to defend lawsuits relating to third party content, clearly weighs in Melbourne's favor and against granting the Application.

On the Plaintiffs' side, they cannot demonstrate that the equities weigh in their favor or that the public interest would benefit through the granting of the relief requested. Plaintiffs waited over a month after filing this action to bring this *ex parte* Application. They complain that Defendants are posting links to publicly available information and to that which Plaintiffs themselves have posted online. Plaintiffs' conduct clearly evidences that the denial of the Application will have little impact. Further, Plaintiffs have provided no meaningful evidence that they have been, or will be, the subject of ridicule or threats of violence as a result of the materials appearing on the subject websites. Without such a showing, irreparable harm cannot simply be presumed.

Accordingly, the Application should be denied in its entirety as to Melbourne.

## IV.     CONCLUSION

For all of the above reasons, Melbourne respectfully requests that the Application be denied in its entirety.

DATED: April 29, 2013           Respectfully submitted,

VAN ETTEN SUZUMOTO & SIPPRELLE LLP


By:     /s/ Joshua D. Mendelsohn
         David B. Van Etten
         Joshua D. Mendelsohn
Attorneys for Defendant MELBOURNE IT DBS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that, on April 29, 2013, the foregoing **DEFENDANT MELBOURNE IT DBS, INC.'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** in the within action was electronically filed for service through the CM/ECF system for the United States District Court, Central District of California.

Counsel for all appearing parties are registered CM/ECF Users, and no paper copies were required to be served by traditional means.

/s/ JoDee Carroll
JoDee Carroll