UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | **EDCV 13-0514 JGB (DTBx)** | Date | May 9, 2013 |
|---|---|---|---|
| Title | *John Doe #1, et al. v. Brent Oesterblad, et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **Order DENYING Plaintiffs' Ex Parte Application for a Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction (Doc. No. 19) (IN CHAMBERS)**

Before the Court is Plaintiffs' Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction. (Doc. No. 19.) The Court finds this matter appropriate for resolution without a hearing pursuant to Local Rule 7-15. After considering the papers filed in support of and in opposition to the application, the Court DENIES Plaintiffs' application WITHOUT PREJUDICE.

**I. BACKGROUND**

Plaintiffs are eight convicted sex-offenders, proceeding as John Does 1 through 8, and the spouses of two convicted sex offenders, proceeding as Jane Does 9 and 10. They filed their Amended and Verified Complaint against Defendants Brent Oesterblad ("Oesterblad"), Chuck Rodrick II ("Rodrick"), Sarah Shea ("Shea"), Kevin Miller ("Miller"), Melbourne IT DBS, Inc. ("Melbourne"), and fictitious defendants (collectively, "Defendants") on April 10, 2013.[1] ("AC," Doc. No. 15.) Proofs of service have been filed as to Defendants Rodrick and Melbourne. (Doc. Nos. 23, 37.) No other Defendants have appeared in the case.

---

[1] The Amended and Verified Complaint also named David Oesterblad and Traci Heisig as Defendants, but they were voluntarily dismissed on April 24, 2013. (Doc. Nos. 17, 18.)

The following facts are taken from the Amended Complaint. John Does 1, 2, and 7 are required to register as sex offenders. (AC ¶¶ 6, 7, 12.) John Does 3, 5, and 8 were convicted of sex-related offenses but are not required to register as sex offenders. (AC ¶¶ 8, 10, 13.) John Doe 4 was required to register as a sex offender for 10 years through January 2013. (AC ¶ 9.) John Doe 6 was required to register as a sex offender until 2010, and the information regarding him and his offense was removed from the state government sex offender website in 2012. (AC ¶ 11.) Jane Doe 9 is married to John Doe 4 and has not been convicted of a sex-related offense. (AC ¶ 14.) Jane Doe 10 is married to John Doe 5 and has not been convicted of a sex-related offense. (AC ¶ 15.)

The AC alleges that Defendants own, operate, maintain, serve as agents of, and/or were employed by the websites "Offendex," "Online Detective," and "SORarchives." (AC ¶¶ 26, 29, 32.) The AC specifically identifies Melbourne as the registrar of the domain names for these three websites. (AC ¶ 23.) These websites allegedly have at all times listed the names and photographs of the John Doe Plaintiffs and identified them as sex offenders without obtaining their consent. (Id.)[2] The AC also contends that Defendants have conspired to extort money from Plaintiffs by requiring them to pay for removal of their names and photos from the websites. (AC ¶¶ 27, 30, 33.)

Based upon these factual allegations, the AC states three claims for relief. The first claim states a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) under 18 U.S.C. § 1961 for the racketeering activity of extortion. (AC ¶¶ 42-50.) Claim two is stated under Cal. Civ. Code § 3344 for violations of Plaintiffs' right of publicity. (AC ¶¶ 51-56.) The final claim is for negligent or intentional infliction of emotional distress. (AC ¶¶ 57-61.)

On April 26, 2013, Plaintiffs filed an Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction. ("TRO," Doc. No. 19.) In support of the application, Plaintiffs filed declarations of six of the Doe Plaintiffs under seal. (Doc. Nos. 28-33.)[3] Melbourne opposed on April 29, 2013. ("Opp'n," Doc. No. 21.) Rodrick joined the opposition on May 1, 2013. ("Joinder," Doc. No. 26.)

---

[2] It is not clear from the AC whether the websites have also listed the names and photographs of the Jane Doe Plaintiffs without their consent. (Compare AC ¶¶ 14, 15 with AC ¶¶ 26, 29, 32.)

[3] In a declaration supporting its opposition, Melbourne states that it did not receive the under seal declarations filed in support of Plaintiffs' application. (Declaration of Joshua D. Medelsohn ¶ 4, attached to Opp'n, Exh. 2.)

## II. LEGAL STANDARD[4]

"The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

The purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction. See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. Lockheed Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995); see Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2011).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). The Ninth Circuit employs the "serious questions" test, which states "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 690 (2008) (citations omitted). When seeking a temporary restraining order through an ex parte application, a plaintiff must further show that he is without fault in creating the crisis necessitating the bypass of regular motion procedures. See Mission Power Eng'g Co. v. Cont'l Gas Co., 883 F. Supp. 488, 492–93 (C.D. Cal. 1995).

The propriety of a temporary restraining order, in particular, hinges on a significant threat of irreparable injury (Simula, Inc. Autoliv, Inc., 175 F.3d 716, 725 (9th Cir. 1999)) that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

## III. DISCUSSION

---

[4] Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil Procedure.

### A. Failure to Give Notice

Plaintiffs failed to file proofs of service for either the Amended Complaint or the TRO as to Defendants Oesterblad, Shea, or Miller. These Defendants have not appeared in the case, nor have they responded to the TRO.

According to Federal Rule of Civil Procedure 65(b) and Local Rule 7-19.1, an applicant for a temporary restraining order must attempt to give the affected parties, or their counsel, actual notice of when and where the application for the TRO is to be made. Fed. R. Civ. P. 65(c); L.R. 7-19.1. A TRO may issue without such notice only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b).

Here, Plaintiffs fail to show proper notice as to Oesterblad, Shea, or Miller. Plaintiffs have not submitted proofs of service on these Defendants, nor have they submitted any evidence purporting to show any efforts made to give notice. Additionally, Plaintiffs have not offered a reason notice should not be required.

Accordingly, the Court DENIES the TRO WITHOUT PREJUDICE as to Defendants Oesterblad, Shea, and Miller. The Court will address the merits of the TRO below as to the remaining Defendants Melbourne and Rodrick.

### B. Likelihood of Success on the Merits

Plaintiffs seek a temporary restraining order "ordering Defendants to cease publication of Plaintiffs' personal information, including but not limited to, their names and photographs from the SORarchives, Online Detective, and Offendex websites." (TRO at 3.) Plaintiffs make their application on the basis that publication of their personal information violates their right to publicity under Cal. Civ. Code § 3344.[5]

Section 3344(a) states in relevant part:

> "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result

---

[5] In their Amended Complaint, Plaintiffs also allege that Defendants violated the RICO Act under 18 U.S.C. § 1961 and caused Plaintiffs to suffer negligent or intentional emotional distress, but Plaintiffs do not proceed with the TRO on those bases. (See TRO at 2 n.2.)

    thereof."

Cal. Civ. Code § 3344(a). To state a statutory claim under Section 3344, a plaintiff must plead sufficient facts to establish: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage . . . ; (3) lack of consent; [] (4) resulting injury" (5) "knowing use by the defendant," and (6) "a direct connection between the alleged use and the commercial purpose." <u>Downing v. Abercrombie & Fitch</u>, 265 F.3d 994, 1001 (9th Cir. 2001) (citing <u>Eastwood v. Superior Court</u>, 149 Cal. App. 3d 409, 416-17 (1983)).

  Plaintiffs have failed to identify any facts sufficient to establish the first element of its right of publicity claim. Plaintiffs have not pointed to any facts tying Rodrick or Melbourne to the publication of Plaintiffs' names or photographs on the offending websites. Plaintiffs state that "on information and belief" Rodrick is an "owner, operator, maintainer, agent, and/or employee" of the three websites. (TRO at 9.) Plaintiffs provide no specific facts or evidence to demonstrate if or how Rodrick works for or with these websites. As to Melbourne, Plaintiffs contend, without any supporting evidence, that it is the registrar of the domain names for the websites. (<u>Id.</u>) Melbourne vehemently refutes this assertion and provides a declaration from the Manager of Client Services who testified that after conducting a search of Melbourne's records, she found that "Melbourne is not now, and has never been, the registrar for any of the Domains and provides no services whatsoever with respect to the Domains." (Declaration of Gina A. Hayes ¶ 5, attached to Opp'n, Exh. 1.) At this stage of the litigation, Plaintiffs have not provided enough evidence tying Defendants to their alleged harm to establish a likelihood of success on the merits.

  Moreover, Plaintiffs have failed to present any argument as to why Section 3344(d) does not apply to the websites' use of Plaintiffs' names and photos. Section 3344(d) states that the "use of a name, voice, signature, photograph, or likeness in connection with any news, public affairs, or sports broadcast or account, or any political campaign, shall not constitute a use for which consent is required." Cal. Civ. Code § 3344(d). <u>See also</u> <u>Baugh v. CBS, Inc.</u>, 828 F. Supp. 745, 754 (N.D. Cal. 1993) ("California courts have indicated that § 3344(d) should be interpreted to cover a broad range of material."); <u>Downing v. Abercrombie & Fitch</u>, 265 F.3d 994, 1001 (9th Cir. 2001) ("[N]o cause of action will lie for the publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it."). Given that there may be a legitimate public interest in the publication of the identities of current and former sex offenders which would exempt these websites from the consent requirement, the Court cannot find that Plaintiffs will likely succeed on the merits of their right of publicity claim. <u>See</u> <u>Fredenburg v. City of Fremont</u>, 119 Cal. App. 4th 408, 421 (2004) (finding that the "serious public interest" in protecting the public via the disclosure of sex offenders' names and locations outweighed the offenders' right to informational privacy).

  Similarly, Rodrick has raised multiple First Amendment defenses protecting the publication of the objected-to information. (Joinder at 2-5.) <u>See</u> <u>Cher v. Forum Int'l, Ltd.</u>, 692 F.2d 634, 639 (9th Cir. 1982) ("No action under [right of publicity] will lie, however, solely for publication which is protected by the First Amendment."). Plaintiffs provide no arguments responding to Defendants' potential First Amendment defenses. Rodrick cites <u>Cox Broad. Corp. v. Cohn</u>, 420 U.S. 469 (1975) for the principle that the "First and Fourteenth Amendments

command nothing less than that the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection." Id. at 495. Plaintiffs fail to address the argument that the names of registered sex offenders were already available in the public records and re-publishers such as Offendex, Online Detective, and SORarchives are protected from liability under Cox. See also Gionfriddo v. Major League Baseball, 94 Cal. App.4th 400, 409 (2001) ("The First Amendment requires that the right to be protected from unauthorized publicity be balanced against the public interest in the dissemination of news and information consistent with the democratic processes under the constitutional guaranties of freedom of speech and of the press.") (internal quotation omitted). The Court does not hold that Defendants will necessarily succeed on their First Amendment defenses. Instead, the Court finds that Defendants have shown that these defenses bar Plaintiffs from demonstrating, at this stage of the litigation, that they are likely to succeed on the merits of their right of publicity claim. See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1200 (9th Cir. 1980) (emphasizing that a ruling on a preliminary injunction is not a final decision on the merits).

Finally, Rodrick has also argued that the Court lacks personal jurisdiction over him, and has separately filed a noticed motion raising this issue. (Joinder at 2; "Motion," Doc. No. 24.) Plaintiffs provide no rebuttal to Rodrick's personal jurisdiction arguments. Rodrick argues that he is an out-of-state individual, residing in Arizona, who does not regularly conduct business in California or purposely directs any of his commercial activities toward California individuals. (Motion at 5-8.) The Court does not address the merits of Rodrick's argument here, but recognizes this as another reason why Plaintiffs have not established a likelihood of success on the merits.

## C. Irreparable Harm

Plaintiffs have not established that they will be irreparably harmed absent a temporary restraining order. According to the TRO, Offendex has been publishing sex offender data since 2011 and SORarchives and Online Detective began their online publications in 2012. (TRO at 3.) Plaintiffs have cited no immediate, irreparable harm from the continued publication of this information pending the proceedings in this action. Moreover, Plaintiffs waited over a month since filing this action on March 20, 2013 before seeking a temporary restraining order. (Doc. No. 1.) As such, Plaintiffs have failed to identify any "imminent" harm resulting from the continued publication of their information justifying the emergency relief requested. Caribbean Marine Serv., 844 F.2d at 674; Hunt v. National Broadcasting Co., 872 F.2d 289, 296 (9th Cir. 1989) (because substantial unrestrained publicity about Hunt had already occurred, Hunt failed to show how an injunction prohibiting the broadcast of a docudrama would effectively protect his rights).

In identifying alleged harms, Plaintiffs state that they will "suffer damage to their person, property, businesses and reputations." (TRO at 14.) Plaintiffs provide no explanation as to why they believe these damages will result from the publication of their personal information on the identified websites, as opposed to its publication on the state sex offender registries which are public and also available online. See, e.g., Cal. Penal Code § 290.46(a)(1) (mandating the

publication of sex offenders' names and photos on a public internet website). In fact, Plaintiffs offer no explanation for the connection between their alleged financial and emotional harms and the publication of their names and likenesses. Plaintiffs' alleged injuries could be caused by their commission of the crimes, subsequent reporting on the crimes by news or media outlets available online or offline, the state sex-offender registries, or a host of other factors. Plaintiffs readily acknowledge that the names and photographs of registered sex offenders, including many of the John Does, are published on a public website by every state in the nation. (See TRO at 14 n.4.) Without supporting facts connecting the alleged injuries to Defendants' conduct, the Court cannot find that Plaintiffs will be irreparably harmed without the issuance of a temporary restraining order. Moreover, Plaintiffs have failed to identify any injury that is irreparable, in that it is not compensable by an award of damages or an injunction after the completion of discovery. See Arenas v. Shed Media U.S. Inc., 881 F. Supp. 2d 1181, 1194 (C.D. Cal. 2011), aff'd sub nom. Arenas v. Shed Media US, Inc., 462 F. App'x 709 (9th Cir. 2011) (finding no irreparable harm on a right of publicity claim where "[g]iven [plaintiff's] highly publicized behavior, it is not apparent on this evidentiary record that any association with [defendant] will seriously affect his reputation such that damages would not adequately compensate him.").

Even if Plaintiffs could establish that their financial and emotional injuries stem from publication of their identities on these websites[6], an additional factor weighing against Plaintiffs is the fact that their names and criminal information have already been published in multiple forms and are readily available in the public record. It is unlikely that an injunction prohibiting future publications would effectively protect Plaintiffs from future reprisals due to their status as convicted sex offenders. See Meador v. New Times, Inc., 36 F.3d 1103 (9th Cir. 1994) ("Enjoining New Times from future publication would not eliminate the harm that publication already has caused (i.e., the assaults that have occurred and the breakdown in Meador's relationship with his family).").

### D.      Balance of Equities and Public Interest

The balance of equities tips in Defendants' favor since the Court cannot find they are likely responsible for the publication of Plaintiffs' names and likenesses on the websites or are subject to suit in this jurisdiction. In this circumstance, Plaintiffs' alleged injury is unlikely to be redressed by an injunction against Rodrick and Melbourne.

Plaintiffs argue that the balance of equities favors them because the information

---

[6] Although the Court finds that Plaintiffs have not established irreparable injury for the purposes of issuing a preliminary injunction, the Court does not foreclose the argument that Plaintiffs may suffer harm from the publication of their names and likenesses in association with their status as a sex offenders, including severe emotional distress such as public humiliation and depression and damages to their person, property, and businesses. (See TRO at 5.) See Smith v. Doe, 538 U.S. 84, 101 (2003) ("[T]he public availability of the [name, facts underlying the offenses, and the resulting convictions] may have a lasting and painful impact on the convicted sex offender.").

published on the websites is "incorrect and/or outdated." (TRO at 14.) Plaintiffs provide no evidence to support this assertion. Moreover, in cases involving an injunction, the truth or falsity of the publication is immaterial. See Org. for a Better Austin v. Keefe, 402 U.S. 415, 418-19 (1971).

Most troubling to the Court's evaluation of the public interest is that the relief Plaintiffs request essentially amounts to a prior restraint on speech. "Prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights and are presumptively unconstitutional." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976). "The special vice of a prior restraint is that communication will be suppressed . . . before an adequate determination that it is unprotected by the First Amendment." Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations, 413 U.S. 376, 390 (1973). Here, the Court cannot issue a preliminary injunction because doing so would require the Court to make predictions as to what restrictions on speech will ultimately be found permissible, thereby potentially chilling speech.

It cannot reasonably be disputed that the websites' portrayal of Plaintiffs' names and likenesses and its identification of Plaintiffs as sex offenders constitutes speech. See Spence v. Washington, 418 U.S. 405, 410–11 (1974) (identifying "speech" as "expressions conveying an intent to convey a particularized message," and, "in the surrounding circumstances[,] the likelihood was great that the message would be understood by those who viewed it."). Even factual information can be considered speech entitled to First Amendment protection. See Bernstein v. U.S. Dep't of State, 922 F. Supp. 1426, 1435 (N.D. Cal.1996) ("Instructions, do-it-yourself manuals, [and] recipes" are all "speech").

In addition, as discussed above, the websites' speech touches on a matter of public concern, that is, the identification of sex offenders in order to protect the public. The Supreme Court has recognized that the "release of certain information about sex offenders to public agencies and the general public will assist in protecting the public safety." Smith v. Doe, 538 U.S. 84, 93 (2003). Given the public nature of the information involved and the interest recognized by all fifty states and the Supreme Court in the public identification of sex offenders to protect the public safety, it can hardly be argued that the speech involved in this case is of limited or purely private interest. See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 761 (1985).

Numerous courts have recognized the invalidity of a preliminary injunction seeking a prohibition on speech that constitutes a matter of public concern. See Arenas, 881 F. Supp. 2d at 1192 (denying preliminary injunction where the publication concerned a matter of public interest); New.Net, Inc. v. Lavasoft, 356 F. Supp. 2d 1071, 1086 (C.D. Cal. 2003) ("Because the disputed content of the Ad-Aware software addresses a subject of public importance and debate, it is entitled to the full protection of those First Amendment cases that bar prior restraints."); J.K. Harris & Co., LLC v. Kassel, 253 F. Supp. 2d 1120, 1129 (N.D. Cal. 2003).

Given the serious First Amendment concerns, the Court finds that the public interest in protecting the Fist Amendment and avoiding the chilling of speech supercedes Plaintiffs' interest

in the prohibition of the publication of their names and likenesses. See <u>Farris v. Seabrook</u>, 677 F.3d 858, 868 (9th Cir. 2012) (quotation omitted) ("[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); <u>Sammartano v. First Judicial District Court</u>, 303 F.3d 959, 974 (9th Cir. 2002) (noting the "significant public interest" in upholding free speech principles).

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES WITHOUT PREJUDICE Plaintiffs' Ex Parte Application for a temporary restraining order and request for an order to show cause on a preliminary injunction.

**IT IS SO ORDERED.**